UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| KEVIN T. MAZURKIEWICZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-49 |
| | § | |
| CLAYTON HOMES, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Defendant CMH Homes, Inc. seeks to enforce a number of contractual limitations on the ability of its former employee, Plaintiff Kevin Mazurkiewicz, to assert claims related to his employment.  While arbitration clauses are the most commonly litigated provisions in employment agreements limiting the right to sue, this case involves two others: (1) a provision shortening the statute of limitations to six months, and (2) a so-called "class action waiver" that bars the employee from bringing suit in a representative capacity.  For the reasons discussed below, the Court concludes that the contractual limitations period is not enforceable against the individual Americans with Disabilities Act and Fair Labor Standards Act claims in this case, but the agreement preventing Mazurkiewicz from bringing a collective action is.  The Court also rejects CMH's other arguments seeking dismissal of the individual claims.  Mazurkiewicz may pursue his individual claims, but his allegations of a collective FLSA action are dismissed.

## I.   BACKGROUND

Mazurkiewicz began working for CMH as a manufactured homes seller in September 2010.  Prior to beginning his employment, he completed and signed an employment application on August 18, 2010, and an employment agreement on August 27, 2010.  The employment application provided that "by signing and submitting this employment application" Mazurkiewicz agreed that he was "waiving [his] right to participate as a member in a class-action lawsuit or proceeding and/or act as a representative of a class of similarly situated individuals in any lawsuit or proceeding against" CMH.  Docket Entry No. 11-1 at 6.  The employment agreement provided that, in exchange for a voluntary mediation process, Mazurkiewicz agreed "[t]o file any lawsuit no more than six months after the date of the employment action that is the subject of the lawsuit" and "[t]o not be a member of a class-action lawsuit against" CMH.  *Id.* at 9.

At the end of July 2011, Mazurkiewicz was terminated.  He promptly filed a charge of discrimination with the EEOC on August 18, 2011, alleging that he was discharged in violation of the ADA.  The charge identified Mazurkiewicz's employer as Clayton Homes, Inc., CMH's parent company.  In its statement of position in response to this charge, CMH clarified that it was his true employer.  The EEOC issued Mazurkiewicz a right to sue letter about one year later, on August 21, 2012.

Mazurkiewicz then filed this lawsuit on November 16, 2012, asserting claims for violations of the ADA and FLSA, and pleading his FLSA claim as a putative collective action. The original complaint named only Clayton Homes as a defendant. On January 10, 2013, he amended his complaint to add CMH as a defendant, and amended again on May 20, 2013 to remove Clayton Homes.

## II.   STANDARD OF REVIEW

CMH's motion seeks dismissal under Rule 12(b)(6) or, in the alternative, summary judgment under Rule 56. Because the parties' briefing relies on documents outside the pleadings, such as the employment agreements and the records from the EEOC proceeding, the Court will review the motion under the summary judgment standard. *See* Fed. R. Civ. P. 56(a) (stating that a court shall grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law"). Although summary judgment typically occurs at a later stage in the case, the Court denies Mazurkiewicz's request for discovery on the issues presented because they are legal questions on which further factual development would not assist.

## III.   DISCUSSION

### A.   Whether the Claims Are Contractually Barred

#### 1.   *Scope of the Agreements*

Before addressing the enforceability of the contractual limitations period and "class action" waiver, the Court must determine whether these provisions facially apply to the claims in this case.  The contractual limitations period and one of the class waivers appear as part of the following "Mediation Agreement" in the "Employment Form":

> Mediation Agreement: I understand that if I should have a complaint against the Company that is not resolved, the Company will, at my request, institute a mediation process.  In exchange for this mediation benefit, in the event the Company cannot resolve my dispute and I think a lawsuit arising out of my employment is necessary, I agree with the Company as follows:
>
> 1. Jury Trial Waiver: [omitted]
>
> 2. Statute of Limitations: To file my lawsuit no more than six months after the date of the employment action that is the subject of the lawsuit.  My signature below indicates that I agree to waive all rights contained in any law that would allow me more than six (6) months to file suit.
>
> 3. Class Action Waiver:  To not be a member of a class-action lawsuit against the company.  My signature below indicates that I agree to waive any right I may have to be a member of a class action lawsuit against the Company.

Document Entry No. 11-1 at 9.  Mazurkiewicz argues that because he did not elect to use the mediation program, the contractual "Statute of Limitations" and "Class

Action Waiver" do not apply.  While creative, this argument contradicts the plain language of the agreement, which provides that the employee makes the agreements in exchange for a "mediation benefit."  *Id.*  Nothing indicates that election of the mediation benefit is a condition to application of the employee's agreements to waive a jury, be subject to a six-month limitations period, and "not be a member of a class-action lawsuit."  *Id.*

The Court has more concern about the applicability of the "Class Action Waiver" to Mazurkiewicz's FLSA claim that he seeks to bring "as a collective action under 216(b) of the FLSA on behalf of himself and others similarly situated."  Docket Entry No. 21 at 1.  Mazurkiewicz's status in this case is not as a "member of a class-action lawsuit."  Docket Entry No. 11-1 at 9.  An FLSA collective action is not termed a "class action" and has fundamental differences with a Rule 23 action that binds absent class members.  *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA . . . ." (citation omitted)).

But the Court need not decide if the "Class Action Waiver" in this "Mediation Agreement" paragraph applies to an FLSA collective action, because the following broader language in the employment application applies to FLSA cases brought collectively: "I am waiving my right to . . . act as a representative of

a class of similarly situated individuals in any lawsuit or proceeding against the Company." Docket Entry No. 11-1 at 6; *compare id.*, *with* Docket Entry No. 21 at 1 (purporting to bring this action "on behalf of himself and others similarly situated").

The Court also rejects Mazurkiewicz's argument that the contractual provisions are not conspicuous, as they are contained in a two-page employment application that Mazurkiewicz completed and signed and a two-page employment agreement that he signed once and initialed twice. *See* Docket Entry No. 11-1 at 5–6, 8–9; *see also Am. Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 146 (5th Cir. 1995) ("In Texas, the courts examine the entire document when making their determination of whether a disclaimer is conspicuous." (citations omitted)). For these reasons, the Court finds that the claims in this case fall within the scope of the contracts Mazurkiewicz signed. The next question is whether those provisions are legally enforceable.

## 2.     *Enforceability of the Contractual Limitations Period*

It has long been recognized that "a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statue of limitations, provided that the shorter period itself shall be a reasonable period." *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947); *see also Vincent v. Comerica*

*Bank*, No. H-05-2302, 2006 WL 1295494, at *4 (S.D. Tex. May 10, 2006) (enforcing a contractually shortened limitations period).   But when these provisions effectively limit a plaintiff's substantive right to recovery or act as a complete bar to relief, they are not reasonable.  *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009) ("[A] substantive waiver of federally protected civil rights will not be upheld . . . ." (citations omitted)); *see also Salisbury v. Art Van Furniture*, 938 F. Supp. 435, 437–38 (W.D. Mich. 1996) ("[T]he contractual limitation certainly effected a 'practical abrogation' of the right to file an ADA claim and is, therefore, unreasonable . . . .").  The Court now addresses whether the six-month limitations period effectively prevents Mazurkiewicz from bringing an ADA or FLSA suit or limits his potential recovery under those federal statutes.

### a.    ADA Claim

With respect to the ADA claim, the contractual limitations period effectively bars Mazurkiewicz from bringing suit.  Under the ADA administrative scheme, which mirrors that for Title VII, "an aggrieved party has 180 days (or roughly six months) after the alleged unlawful employment practice to file a charge, and the EEOC is given at least 180 days[1] after the filing of the charge (roughly another six

---

[1] A person claiming to be aggrieved may request a right-to-sue letter "at any time after the expiration of one hundred eighty (180) days from the date of filing of the charge with the Commission."   29 C.F.R. § 1601.28(a)(1).   A person is only entitled to a letter before the expiration of 180 days if a Commission director "has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect."  *Id.*

months) to make its investigation and determination." *Mabry v. W. & S. Life Ins. Co.*, No. 1:03 CV 848, 2005 WL 1167002, at *3 (M.D.N.C. Apr. 19, 2005) (citing 42 U.S.C. § 2000e-5 and setting forth the "integrated, multistep administrative scheme created by Congress for Title VII and ADA claims" (citation and internal quotation marks omitted)).   Other courts have thus recognized that because "the contractual limitations period would expire before the employee ever had the opportunity to file suit, the employee would be effectively precluded from filing a Title VII or ADA suit." *Id.* at *4; *see also Cole v. Convergys Customer Mgmt. Grp., Inc.*, No. 12-2404-SAC, 2012 WL 6047741, at *4 (D. Kan. Dec. 5, 2012) ("By complying with these administrative exhaustion requirements of Title VII, as the law requires, [the plaintiff] was necessarily precluded [] from filing those claims in court within six months of her termination.").

CMH cites cases in which it contends courts have enforced contractual limitations periods of similar length.   But not one of those cases applied a contractual limitations period to bar claims that require completion of the EEOC administrative process before a suit may be filed.   Many involved only state law claims. *See, e.g., Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707–08 (7th Cir.

---

§ 1601.28(a)(2).  But an aggrieved person is not *entitled* to obtain an early notice of right to sue. *See Walker v. UPS, Inc.*, 240 F.3d 1268, 1273 (10th Cir. 2001) ("Private parties . . . do not have the power to take away EEOC's enforcement authority or to force it to issue early right to sue notices." (citation omitted)).   For this reason, CMH's suggestion that Mazurkiewicz could file suit and demand an early right to sue letter from the EEOC is unpersuasive. *See also O'Phelan v. Fed. Express Corp.*, No. 03 C 00014, 2005 WL 2387647, at *4 (N.D. Ill. Sept. 27, 2005) (rejecting the same argument).

2004) (enforcing six-month contractual limitations period in a state-law retaliatory discharge suit); *Vincent*, 2006 WL 1295494, at *6 (applying six-month contractual limitations period in a defamation suit).   Others involved claims under federal statutes that do not require administrative exhaustion.   *See Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357–58 (6th Cir. 2004) (affirming district court's dismissal based on six-month contractual limitations period where plaintiff asserted discrimination claims under state law and 42 U.S.C. § 1981, as well as various state tort claims); *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1193–94, 1206, (7th Cir. 1992) (affirming district court's dismissal of section 1981, breach of contract, and wrongful discharge claims on contractual limitations grounds and affirming the district court's judgment in favor of the plaintiff on the merits of his Title VII claim); *Badgett v. Fed. Express Corp.*, 378 F. Supp. 2d 613, 626 (M.D.N.C. 2005) (holding that "Plaintiff's emotional distress, § 1981, and FMLA[2] claims are barred as untimely" under a six-month contractual limitations period).

CMH specifically cites *Badgett* as a case that enforced a "six-month contractual limitations period contained in an employment agreement as to the plaintiff's claims of retaliation under Title VII."   Docket Entry No. 11 at 10 (emphasis omitted).   But *Badgett* enforced the six-month limitations period to bar a

---

[2] The Family and Medical Leave Act does not have an administrative exhaustion requirement. *See Churchill v. Star Enterprises*, 183 F.3d 184, 190 (3d Cir. 1998) (noting that unlike the ADA, the FMLA does not "require pursuit of administrative remedies before a plaintiff may file a complaint in court").

number of state and federal claims, except for the Title VII claim, which the court evaluated on the merits without any apparent defense argument that the contractual limitations applied. *See Badgett*, 378 F. Supp. 2d at 626–32 (analyzing merits of Title VII claim under *McDonnell Douglas* framework).   Finally, CMH cites *Adevereaux v. Sports & Fitness Clubs of America, Inc.*, which did involve Title VII and ADEA claims.  *See Adevereaux*, No. 3-03-CV-2824-L, 2004 WL 414896, at *1–2 (N.D. Tex. Feb. 17, 2004).  *Adevereaux* misses the mark, however, because it involved an agreement to arbitrate employment discrimination claims within one year.   Enforcement of that provision did not create the catch-22 that having to comply with both EEOC exhaustion and the six-month limitations period creates, because an EEOC filing is not a prerequisite to arbitration.  *See generally Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) ("We [] are unpersuaded by the argument that arbitration will undermine the role of the EEOC in enforcing the ADEA. . . .   [N]othing in the ADEA indicates that Congress intended that the EEOC be involved in all employment disputes."); *Morris v. Temco Serv. Indus., Inc.*, No. 09 Civ. 6194(WHP), 2010 WL 3291810, at *5 (S.D.N.Y. Aug. 12, 2010) (noting that 42 U.S.C. § 2000e-5(f)(1) "imposes this exhaustion requirement only for litigation in federal court and does not implicate private arbitration agreements").

Although CMH's did not cite any cases applying a contractual limitations period to claims requiring EEOC exhaustion, this Court has found two such district court cases.  The first, *Steward v. DaimlerChrysler Corp.*, 533 F. Supp. 2d 717 (E.D. Mich. 2008), involved an atypical situation in which the plaintiff had received her right-to-sue notice within the six-month contractual limitations period. *Id.* at 722 (barring ADA suit based on failure to comply with contractual limitations period).  In the second, *Ray v. FedEx Corporate Services, Inc.*, 668 F. Supp. 2d 1063 (W.D. Tenn. 2009), the plaintiff did not raise and the court did not address the near impossibility of complying with both the contractual limitations period and the EEOC exhaustion requirment for the asserted ADEA claim.[3]  *Id.* at 1067–69.

Against this scant authority in Title VII, ADA, or ADEA cases enforcing a contractual limitations period of six months or similar length, numerous district courts have found contractual limitations periods unenforceable when they do not allow sufficient time for the EEOC administrative process.  *See Mabry*, 2005 WL

---

[3] In *Ray*, the plaintiff sought reconsideration based on an argument that the filing of an EEOC charge within six months of termination constituted the necessary "filing" that the contract required take place within six months.  *Ray*, 668 F. Supp. 2d at 1069–70.  The Court both refused to consider that new argument and noted that it likely failed.  *Id.* at 1070 n.2.  Regardless, that issue concerning whether filing an EEOC charge constitutes the "legal action" that must be filed within six month under the terms of the FedEx employment agreement is distinct from the argument that a six-month contractual limitations period for suit effectively bars a claim because of the EEOC exhaustion requirement.  Plaintiff does not argue in this case that filing an EEOC complaint complied with the language requiring "fil[ing] any lawsuit" within six months, Docket Entry No. 11-1 at 9, and that argument flies in the face of the term "lawsuit."

1167002, at *5 (citing cases and holding "that the six-month contractual limitations period in the Agreement is unreasonable and against public policy as applied to an ADA claim").   Unlike *Steward* and *Ray*, these courts addressed the difficulty of having to receive the EEOC right-to-sue letter and then file suit within six months. *See Cole*, 2012 WL 6047741, at *4 ("Enforcing the contractually agreed-upon limitations period would abrogate [the plaintiff's] rights under Title VII, leaving her without redress for her injuries.   The six-months' limitations period is therefore unenforceable, unreasonable, and against public policy under federal law . . . ." (citations omitted)); *O'Phelan v. Fed. Express Corp.*, No. 03 C 00014, 2005 WL 2387647, at *4 (N.D. Ill. Sept. 27, 2005) (finding that "enforcement of a six month limitation on claims effectively prevents the plaintiff from having any mechanism for redress under Title VII due to the EEOC's administrative requirements" (citation omitted)); *Mabry*, 2005 WL 1167002, at *4 ("Title VII and ADA claims are governed by a Congressionally-designed administrative process, and Defendants may not thwart that administrative process by enforcement of the contractual limitations period.");  *Lewis v. Harper Hosp.*, 241 F. Supp. 2d 769, 772 (E.D. Mich. 2002) ("Were this Court to uphold the six month limitation of action clause as to Plaintiff's Title VII claim, the EEOC's period of exclusive jurisdiction would have the effect of abrogating Plaintiff's ability to bring a Title VII suit."); *Salisbury*, 938 F. Supp. at 437–38 ("With respect to the ADA claim, the

contractual limitation certainly effected a 'practical abrogation' of the right to file an ADA claim and is, therefore, unreasonable . . . ."); *Scott v. Guardsmark Sec.*, 874 F. Supp. 117, 121 (D.S.C. 1995) (rejecting a six-month contractual limitations period in an ADA case because it was "abhorrent to public policy," "required an employee to waive his or her federal protections," and "reduce[d] the time limits to assert a federal cause of action").

Apparently recognizing the problem with a contractual limitations period that effectively bars plaintiffs from enforcing their federal antidiscrimination rights, CMH tries to come up with a procedural path in which Mazurkiewicz could have complied with both the EEOC administrative requirement and the six-month limitations period. He could have filed suit within six-months of his termination, CMH contends, and then asked the Court to stay his lawsuit until he received the right-to-sue letter from the EEOC. But while it remains unclear in the Fifth Circuit whether failure to exhaust administrative remedies deprives a court of subject-matter jurisdiction, *see Lowe v. Am. Eurocopter, LLC*, No. 1:10CV24-A-D, 2010 WL 5232523, at *1 n.1 (N.D. Miss. Dec. 16, 2010) (noting the uncertainty and collecting cases), filing an EEOC charge and receiving a right-to-sue letter are unquestionably "conditions precedent for suit in federal court." *Mabry*, 2005 WL 1167002, at *5 (explaining that a plaintiff cannot sue until receipt of the right-to-sue letter, even though the Fourth Circuit does not treat EEOC exhaustion as an

issue of subject-matter jurisdiction); *see also Holloway v. Caldera*, 263 F.3d 641, No. 99-31333, 2000 WL 1029005, at *4 (5th Cir. 2000) (per curiam) (affirming district court's dismissal of plaintiff's Title VII claims for failure to exhaust administrative remedies).  Accordingly, cases filed in the Fifth Circuit are subject to Rule 12 dismissal if the plaintiff has not completed the EEOC process. *See, e.g.*, *Williams v. KB Home*, No. 3:12-CV-139, 2013 WL 1574166, at *1 n.1 (noting that "failure to exhaust is a basis for dismissal under either Rule 12(b)(1) or Rule 12(b)(6)").  CMH's suggestion that Mazurkiewicz could have filed suit before receiving his right-to-sue letter would also circumvent the congressional enforcement scheme in which the EEOC is given first crack at resolving employment disputes prior to the filing of a lawsuit.  *See Mabry*, 2005 WL 1167002, at *5 ("This administrative scheme was carefully crafted by Congress, and requiring a party to file suit before the EEOC has an opportunity to review a charge would undermine and contravene the Congressionally-created scheme." (citations omitted)).

The Court therefore agrees with the majority view of the lopsided split in the federal courts on this issue, and holds that a six-month limitations period is unenforceable against claims that require an EEOC right-to-sue letter.  CMH's motion to dismiss the ADA claim on this basis is therefore denied.

### b.    FLSA Claim

The FLSA does not require administrative action prior to filing suit, so the contractual limitations period does not effectively bar an FLSA claim as it does an ADA claim.  But limiting the time in which an FLSA plaintiff can sue to six months causes other problems beyond just shortening the period in which a suit must be filed: it substantially limits an FLSA plaintiff's damages and eliminates a key distinction Congress made based on a defendant's culpability.

The interplay between the FLSA limitations period and available remedies demonstrates why a contractual shortening of the limitations period curtails a plaintiff's potential recovery.   The FLSA establishes a two-year statute of limitations for ordinary violations and a three-year period for willful violations.  29 U.S.C. § 255(a).  "A cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed."  *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir. 1987) (citation omitted); *see also Hendrix v. City of Yazoo City*, 744 F. Supp. 1412, 1415 (S.D. Miss. 1990) ("[T]he failure of an employer to pay minimum wages or overtime . . . constitutes a continuing violation, such that a new cause of action accrues with each paycheck." (citations omitted)).  Courts have consistently interpreted the FLSA to allow plaintiffs to recover damages for pay periods "as far back as the statute of limitations will reach."  *Pruiett v. West End*

*Restaurants, LLC*, No. 3:11-00747, 2011 WL 5520969, at *5 (M.D. Tenn. Nov. 14, 2011).

The substantive impact of the six-month contractual limitations period is evident from the effect the provision would likely have over an FLSA plaintiff who filed suit within the contractual six-month period. Assume Mazurkiewicz had filed his FLSA suit on January 1, 2012. His claim would have been timely under the contractual limitations period, but he would have been entitled only to damages for pay periods in June and July 2011, rather than a recovery for all pay periods back to January 2010 or 2009. Employment claims brought under other statutes do not often raise this problem, because the plaintiff is usually challenging a discrete adverse employment action, typically a termination. In those situations, so long as an employee complies with a shorter contractual limitations period, he will be entitled to full damages, as lost wages are a forward-looking calculation.

Based on this understanding of the effect a contractual shortening of the limitations period would have on FLSA recoveries,[4] most courts have held that

---

[4] The mix of FLSA statutory provisions and case law that have tied the recovery to the statute of limitations does not expressly preclude a scenario in which a contractual limitations period would govern the time for filing suit, but then the statutory two- or three-year limitations period would determine how far back the plaintiff's damages could reach. But district courts addressing the issue have considered that to be the case, *see infra* pp. 17–18, the defendant here does not concede that FLSA damages could cover the statutory time period, and the Department of Labor interprets contractual limitations periods to have this effect on FLSA damages, *see* Brief for the Secretary of Labor and the Equal Employment Opportunity Commission as *Amici Curiae* in Support of Plaintiff-Appellant, *Boaz v. Fed. Express Corp.*, No. 12-5319 (6th Cir. July 11, 2012), *available at* http://www.dol.gov/sol/media/briefs/boaz(A)-07-11-2012.htm. The Court therefore

such provisions are unenforceable.  *See Taylor v. Am. Income Life Ins. Co.*, No. 1:13 CV 31, 2013 WL 2087359, at *3 (N.D. Ohio May 14, 2013) (refusing to enforce an arbitration agreement that provided for a 30-day period of limitations because it "[d]epriv[ed] an employee of his full recovery by diminishing his right to compensation" and therefore "denie[d] him his substantive rights under the FLSA."); *Pruiett*, 2011 WL 5520969, at *5 ("Plaintiffs' substantive right to full compensation under the FLSA may not be bargained away[,]" and therefore "the contractual limitations period is unenforceable as to FLSA claims."); *see also Wineman v. Durkee Lakes Hunting & Fishing Club, Inc.*, 352 F. Supp. 2d 815, 822 (E.D. Mich. 2005) (holding that enforcing a contractual limitations period against an FLSA claim "violates public policy" for other reasons).  The decision to the contrary, *Boaz v. Federal Express Corp.*, 742 F. Supp. 2d 925 (W.D. Tenn. 2010), relied on the general principle that "statutes of limitations are procedural in nature, not substantive," *id*. at 933 (internal quotation marks omitted) (quoting *Ray*, 668 F. Supp. 2d at 1068), but did not address the unusual feature of the FLSA in which the limitations period determines the scope of recovery.  As the Supreme Court has recognized, "the words 'substantive' and 'procedural' themselves . . . do not have a precise content."  *Sun Oil Co. v. Wortman*, 486 U.S. 717, 727 (1988).  However labeled, a contractual limitations provision that limits recoveries in addition to

considers this issue based on that same understanding.

shortening the time period in which a case must be filed produces a far different effect than in the situations in which such contracts have been routinely enforced.

The Court thus agrees with the majority view of federal district courts (and the unanimous view of those to have considered the damages issue) that a contractual limitations provision is not enforceable against FLSA claims. The six-month provision at issue in this case may drastically reduce an employee's available recovery, possibly by more than 80 percent.[5] And enforcing it would do away with the congressional determination that employers who willfully violate the statute should be subject to greater liability than those whose violations are inadvertent. Congress added the three-year limitations period for willful violations in 1966. *See* Fair Labor Standards Act Amendments of 1966, Pub. L. No. 89-601, § 601(B), 80 Stat. 830, 844 (1966). In doing so, the Supreme Court has recognized, "Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, mak[ing] it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988); *see also Chasteen v. Rock Fin.*,[6] No. 07-cv-10558, at 10 (E.D. Mich. Jan.

---

[5] In a case involving willful violations occurring over a number of years, a plaintiff bound by a six-month limitations period would only be entitled to 1/6 of her statutory recovery.

[6] Mazurkiewicz cited this decision in his response. CMH stated in reply that the case was not publicly available, but of course it is on PACER, and it can also be found online. *See* http://www.michiganemploymentlawadvisor.com/Rock%20Financial%20-%20Order%20Barring%20SOL.pdf.

31, 2012) ("The Court finds that the limitation clauses in Plaintiffs' employment agreements reduce [defendant's] overall exposure to overtime wage claims. . . . [S]uch agreements are impermissible overreaching as a matter of law, and must give way to the minimum requirements found in the statute.").  Because the six-month contractual limitations period has the effect of substantially reducing a plaintiff's potential recovery and contravenes the two-tiered liability scheme Congress created, the provision is unenforceable as to the individual FLSA claim.

### 3.     The Collective Action Waiver Is Enforceable

Although the Court concludes that the contractual limitations period does not bar Mazurkiewicz from pursuing ADA and FLSA claims for individual relief, the contractual waiver on his ability to serve as a representative party for others similarly situated does not affect his substantive rights and is thus enforceable.

In enforcing an arbitration agreement, the Fifth Circuit rejected the argument that the "inability to proceed collectively deprives [plaintiffs] of substantive rights available under the FLSA."  *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (relying on *Gilmer*, 500 U.S. at 32).  And the Supreme Court and other courts have recently enforced arbitration clauses that expressly contain waivers on proceeding collectively (both in court and in the arbitral forum).  *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013) (enforcing arbitration agreement's class action waiver in a federal antitrust suit

against American Express brought by merchants who accepted the cards); *Gilmer*, 500 U.S. at 32 (enforcing class action waiver in arbitration agreement to bar ADEA collective action, which incorporates the FLSA collective action statute); *In re Online Travel Co.*, --- F. Supp. 2d ----, 2013 WL 2948086, at *6 (N.D. Tex. June 14, 2013) (finding class action wavier contained in an arbitration provision enforceable).  Though arbitration decisions implicate the Federal Arbitration Act's strong presumption in favor of arbitration, *see, e.g.*, *Gilmer*, 500 U.S. at 26, it otherwise makes little sense that an arbitration agreement could take the more drastic step of entirely waiving a federal court forum, including the right to proceed collectively, but an employment contract could not waive the right to proceed collectively in court while preserving the right to bring suit on an individual claim.  *Cf. Killion v. KeHE Distribs.*, 885 F. Supp. 2d 874, 882–83 (N.D. Ohio 2012) (holding that a collective action waiver contained in a "Separation and Release Agreement" was enforceable in an FLSA action and noting that "[t]he enforceability of a collective waiver does not change outside the arbitration context" because "arbitration agreements are scrutinized under contract theories and are on 'equal footing' with contracts" (citations omitted)).  Because the standard for enforcing contractual limitations on the ability to sue turns largely on whether the contract deprives an employee of his ability to enforce statutory rights, *see infra* pp. 6–7 (discussing the general rules for enforcing contractual

limitations), *Carter*'s holding that the right to proceed collectively in an FLSA action does not implicate substantive rights is also dispositive on the enforceability of a collective action waiver divorced from an arbitration agreement.  *See Carter*, 362 F.3d at 298.  The Court will therefore enforce the contractual limitation on Mazurkiewicz serving in a representative capacity "on behalf of himself and others similarly situated," Docket Entry No. 21 at 1, and dismiss the collective action allegations.

### B.     Whether the ADA Claim is Statutorily Barred[7]

There is a remaining issue for the individual ADA claim that the Court held survives CMH's attempt to enforce the contractual limitations period.  CMH argues that even if its contractual limitation period is not enforceable, the statutory limitations period bars Mazurkiewicz's ADA claim.  As discussed above, an ADA lawsuit must be filed within 90 days of receipt of the EEOC's right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1) (specifying that a Title VII action must be brought within 90 days of the claimant's notification of his right to sue); *id.* § 12117(a) (incorporating the Title VII limitations period to claims brought under the ADA); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).  While

---

[7] CMH's motion also argues that the case against it should be dismissed because, although CMH was named in Mazurkiewicz's complaint, the complaint contained no allegations against CMH, but instead made allegations only against Clayton Homes, Inc., CMH's parent company.  While the motion was pending, the parties entered into a stipulation that CMH was Mazurkiewicz's true employer and the proper defendant.  The Court allowed Mazurkiewicz to amend his complaint to remove Clayton Homes as a defendant.  This portion of CMH's motion is therefore **DENIED** as moot.

Mazurkiewicz filed this case within the 90-day period (on November 16, 2012, in response to an EEOC notice dated August 21, 2012), the original complaint did not name CMH as a defendant, but instead listed parent company Clayton Homes.  The ADA claim against CMH is thus timely only if the amended complaint adding it as a defendant relates back to the original filing date.

Federal Rule of Civil Procedure 15(c)(1)(C) governs.  The rule provides that an amendment relates back when

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B)[8] is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).  The Supreme Court recently explained that "relation back under Rule 15(c)(1)(C) depends on what the [new] party knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading."  *Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2490 (2010).

---

[8] This Rule allows for relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

For claims that require an EEOC investigation prior to filing suit, a defendant's participation in the administrative process may constitute the requisite Rule 15(c)(1)(C) knowledge. *See Barkins v. Int'l Inns, Inc.*, 825 F.2d 905 (5th Cir. 1987). *Barkins* was a Title VII case in which the two plaintiffs incorrectly sued Holiday Inns, Inc. in a timely complaint. *Id.* at 906. After the 90-day period to file suit had expired, plaintiffs amended to add the correct defendant, International Inns, Inc. *Id.* The Fifth Circuit held that this amendment related back, relying on case law holding that a late-added defendant received sufficient notice of suit when it "participated in the EEOC hearings leading up to the suit." *Id.* at 907 (citation omitted). The *Barkins* court also noted that "International Inns was aware of the suit against Holiday Inns through the shared counsel" and that "International Inns point[ed] to no prejudice from [the plaintiffs'] mistake." *Id.*; *see also Krupski*, 130 S. Ct. at 2497–98 (finding relation back when proper and improper defendant were related corporate entities with similar names, proper defendant knew name similarity was confusing for customers, and the complaint "made clear" that the plaintiff intended to sue the proper defendant but for the mistake concerning proper party's identity).

*Barkins* allows relation back in this case. CMH participated in the EEOC investigation process, *see* Docket Entry Nos. 11-3 at 2–4; 19-3 at 18, (letters to EEOC investigator from Bryan Hayes, Director of Employment Practices for

CMH), shares counsel with the improperly named defendant, and has not identified any prejudice as a result of Mazurkiewicz's failure to name it as a defendant in the Original Complaint. Because the Court finds the requirements of Rule 15(c)(1)(C) met, Mazurkiewicz's Amended Complaint relates back and CMH was timely sued.

## IV.   CONCLUSION

For the foregoing reasons, CMH's motion to dismiss, or in the alternative motion for summary judgment (Docket Entry No. 11) is **GRANTED IN PART** and **DENIED IN PART**. Mazurkiewicz's individual ADA and FLSA claims may proceed, but the FLSA collective action allegations are dismissed.

**IT IS SO ORDERED.**

**SIGNED** this 2nd day of August, 2013.

_____
Gregg Costa
United States District Judge

24 / 24